UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | |
|---|---|
| LENIN MOREL, | ) |
| Plaintiff, | ) Civil Action No. 7:22-015-DCR |
| v. | ) |
| DEPARTMENT OF JUSTICE, et al., | ) **MEMORANDUM OPINION** |
|  | ) **AND ORDER** |
| Defendants. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Proceeding without an attorney, Plaintiff Lenin Morel previously filed a Complaint seeking monetary damages pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). He named as defendants Senior Officers James Adams and Nathan Tussey, Senior Officer Specialist Kevin Pearce, and Tracy Goble, RN. [Record No. 1][1] Thereafter, the defendants filed a motion to dismiss or, in the alternative, for entry of summary judgment in their favor. [Record No. 25] The defendants' motion has been fully briefed and is ripe for review.

I.

Morel's Complaint concerns two incidents that occurred during the evening of October 30, 2020, while he was incarcerated at USP-Big Sandy. The first began around 6:15 p.m., after Morel was involved in an altercation with his cellmate, C.G. [Record No. 1 at p. 3-4]

---

[1] Morel's claims against the Department of Justice ("DOJ"), the Federal Bureau of Prisons ("BOP"), and the United States Penitentiary ("USP")-Big Sandy, were dismissed upon the Court's initial screening of the Complaint. [Record No. 8]

-1-

According to Morel, after prison staff responded to the altercation, he and C.G. immediately complied with instructions to stop and get to their knees. [*Id*. at p. 3] But while Morel and C.G. were on their knees, Pearce entered the cell and began shooting a pepper paint gun, striking Morel three times on his back and one time on his right eye. [*Id*.] Morel claims that the shot to his eye: caused it to swell; fractured his eye socket; dilated and disfigured his pupil; and resulted in a loss of vision. [*Id*.]

Morel was assessed by Nurse Goble after the 6:15 p.m. incident. He alleges that, although he told Goble that he was shot in the eye, Goble inspected his eye, stated there was "nothing wrong with [it]" and failed to arrange for immediate medical attention from an eye doctor. [*Id*. at p. 4] Morel also asserts that Goble falsely wrote on the medical assessment records that he was injured as a result of the altercation with his cellmate, and not because he was shot with the paint ball gun, as Morel had reported to her. [*Id*. at p. 4]

The second incident occurred later that evening around 8:40 p.m. Morel was moved into another cell with K.E. after being examined by Goble following the 6:15 p.m. incident. [*Id*.] According to Morel, as soon as he entered the cell, K.E. told Adams that he and Morel could not live in the cell together because K.E. is black and Morel is hispanic. Morel states that, after Adams left Morel's new cell, K.E. pressed the emergency button twice and asked Adams to move him to a cell with someone of his own race. [*Id*.] Morel alleges that Adams and Tussey then came to the front of the cell while Morel was standing at the door and K.E. was standing by the shower at the back of the cell. [*Id*.]

According to Morel, even though no altercation was occurring between Morel and K.E., Adams opened the food tray slot and pepper-sprayed Morel while instructing Morel and K.E. to cuff up. [*Id*. at p. 4-5] Morel claims that he and K.E. immediately complied and Morel was

scooted out of the cell with his hands cuffed behind his back. [*Id*. at p. 5] Morel asserts that Pearce then lifted him into the air by "tricking" him off his feet and proceeded to put pressure with his hands on the back of Morel's head and then took Morel to the ground, causing injuries to Morel's lip, forehead, and left eye, requiring treatment at an outside hospital. [*Id*. at p. 5]

Following this second incident, Morel was again assessed by Goble, who observed that Morel was ambulatory, followed directions and was alert. [Record No. 25-2 at p. 71; Record No. 25-7][2] Morel sustained multiple injuries during the second incident, including a deep laceration on his forehead that required sutures to close, visible swelling to his eyes, and moderate swelling to his mouth. [*Id*.] Due to the injuries to Morel's forehead and eyes, Goble advised Pearce that Morel would need to be sent to an outside hospital for further treatment and care. Morel was then transported by a government vehicle. [*Id*.]

Medical records attached to Morel's Complaint indicate that Morel was admitted to the Emergency Department at the Highlands ARH Regional Medical Center in Prestonsburg, Kentucky at approximately 11:12 p.m. on October 30, 2020, for treatment of facial trauma, including injuries to his eye, head, and dominant hand. [Record No. 1-2 at p. 24-34][3]

---

[2] While Morel disputes the accuracy of Goble's notation in the medical record that his injuries were caused by an altercation with his cellmate, he does not dispute her observations of those injuries. Indeed, his own allegations are that his injuries necessitated that he be sent to an outside hospital for further treatment. [Record No. 1 at p. 5]

[3] While the sufficiency of a plaintiff's allegations is generally tested with reference only to the face of the Complaint itself, *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013), this includes documents attached to the pleading or incorporated into the Complaint by reference. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citation omitted)).

According to doctor's notes in Morel's medical records, the "main concern" was Morel's injuries to his eye. [*Id*. at p. 27] However, there was no ophthalmologist available at Highlands ARH or at the nearby Pikeville Medical Center in Pikeville, Kentucky. Thus, arrangements were made to transfer Morel for evaluation by the Ophthalmology team at the University of Kentucky. [*Id*.]

With respect to the second incident at 8:40 p.m., Morel alleges that staff who assaulted him "fabricated a cell fight," claiming that K.E. assaulted Morel when he was really assaulted by Pearce. [Record No. 1 at p. 5] He further claims that Pearce fabricated an incident report accusing Morel of trying to "head strike" Pearce while Morel was being scooted, which Morel claims was impossible in light of his position. [*Id*.] Morel also asserts that staff fabricated that he threatened Pearce, even though Morel claims that he repeatedly said "I'm not resisting," while Pearce assaulted him. [*Id*.] Morel then contends that Nurse Goble "fabricated medical records" by indicating that Morel's injuries occurred during an altercation with his cellmate. [*Id*.]

As referenced in Morel's Complaint, the following three incident reports were prepared by staff related to the events of October 30: (1) Incident Report No. 3446341 relating to the 6:15 p.m. incident, charging Morel with a violation of Code 201 – Fighting with Another Person; (2) Incident Report No. 3446345 relating to the 8:40 p.m. incident, also charging Morel with a violation of Code 201 – Fighting with Another Person; and (3) Incident Report No. 3446360 written by Pearce charging Morel with a violation of Code 203 – Threatening Bodily Harm and Code 224 – Assaulting without Serious Injury, both in relation to the 8:40 p.m. incident. [*See generally* Record No. 25-1 at p. 5-7.] While Morel was found to have

committed each of the prohibited acts after DHO hearings, he appealed each finding and all three were eventually expunged. [*Id.*]

Morel now brings Eighth Amendment claims on two separate grounds. His first claim seeks to recover against Pearce, Adams, Tussey, and Goble based on allegations that excessive force was used and that the defendants falsified records in an effort to cover up the violation. His second Eighth Amendment claim seeks to recover against Goble claiming that, by failing to send Morel out for immediate treatment by an eye doctor after the injuries he sustained in the initial 6:15 p.m. incident, she displayed deliberate indifference to his serious medical needs.

The defendants seek dismissal of both Eighth Amendment claims. [Record No. 25] With respect to the claim based on the use of excessive force and the alleged efforts to cover it up, the defendants argue that the Court should decline to imply a *Bivens* remedy for this claim consistent with the United States Supreme Court's recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). They further argue that Morel's Eighth Amendment claims against Adams, Tussey, and Goble (including his medical care claim) must be dismissed because Morel's Complaint fails to adequately allege that these defendants were personally involved in the deprivation of Morel's constitutional rights. Alternatively, they seek summary judgment on the grounds that Morel fails to provide any evidentiary support for his claim that his constitutional rights were violated. [Record No. 25-1]

Morel argues in response that a *Bivens* remedy should be implied for his Eighth Amendment claims based on his allegations of the use of excessive force in light of the Supreme Court's decisions in *Carlson v. Green*, 446 U.S. 14 (1980), *Rhodes v. Chapman*, 452 U.S. 337 (1981), and *Whitley v. Albers*, 475 U.S. 312 (1986). [Record No. 28] Morel further

argues that his allegations against Goble, Adams, and Tussey sufficiently allege that each of these individuals were personally involved in the deprivations of his constitutional rights. [*Id.*]

After full consideration of the pleadings and the applicable law, the Court concludes that, in light of recent Supreme Court precedent, a *Bivens* remedy should not be implied for Morel's Eighth Amendment claims based on his allegations that excessive force was used against him and that the defendants falsified records in an attempted cover up. Therefore, these claims against Pearce, Adams, Tussey, and Goble will be dismissed. In addition, Morel's complaint fails to state an Eighth Amendment claim against Goble based on her treatment of his injuries. Thus, this claim also will be dismissed.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the plaintiff's Complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, a court views the Complaint in the light most favorable to the plaintiff and accepts as true all "well-pleaded facts." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Morel is proceeding without an attorney, the Court reads his Complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Here, the defendants seek dismissal or, alternatively, summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of their motion. [Record No. 25-2, 3, 4, 5; Record No. 26-1] Thus, the Court treats the defendants' motion as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713,

719 (6th Cir. 2004) (where a defendant moves both to dismiss and for summary judgment, a plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

A motion under Rule 56 challenges the viability of a claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). To defeat a properly supported motion for summary judgment, the party opposing the motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). If a responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### A.

The defendants first argue that Morel's Eighth Amendment claims based on his allegations of excessive force, including the alleged attempts to cover up the use of excessive force, must be dismissed because the plaintiff's claim presents a new context for a *Bivens*


action and there are special factors counselling against expanding the *Bivens* remedy to this context. The undersigned agrees.

Claims seeking monetary relief against an individual federal official may be pursued (if at all) pursuant to the doctrine of *Bivens*. *Bivens* held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *See Bivens*, 403 U.S. at 397. However, the *Bivens* remedy is a judicially-created and may be implied only in limited circumstances. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in only three circumstances: (1) where federal officials searched a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar*, 137 S.Ct. at 1854-55.

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). *See also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that "[s]ince *Carlson* we have consistently refused to extend *Bivens* to any new context or new category of defendants."). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb."). The

Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857. *See also Silva v. United States*, --- F. 4th ----, 2022 WL 3591107, at *1 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

Under *Ziglar*, the Court employs a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. First, the Court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*. *Hernandez*, 140 S.Ct. at 743 (citations omitted). Whether the claim is presented in a "new context" is to be interpreted broadly, as a context will be regarded "as 'new' if it is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]" *Id*. (quoting *Ziglar*, 137 S. Ct. at 1859). A difference is "meaningful" if, for example, it involves a different constitutional right, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion. *Ziglar*, 137 S.Ct. at 1860.

If the Court concludes that a claim arises in a new context, it then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S.Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied,* No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022). "Put another

way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie." *Egbert*, 142 S. Ct. at 1803 (2022). *See also Ziglar*, 137 S. Ct. at 1857 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (cleaned up).

In this case, Morel's Eighth Amendment claim based on allegations that officers used excessive force against him presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. While, like the claim implied in *Carlson*, Morel's claim sounds in the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Plainly, a prisoner's claim that excessive force was used against him by prison staff is a different context that the claim in *Carlson* of deliberate indifference to a prisoner's medical needs. *See Hower v. Damron*, No. 21-5996 (6th Cir., Aug 31, 2022 Order at p. 4-5) (federal prisoner's Eighth Amendment "failure to protect" claim presents a new context from the Eighth Amendment deliberate indifference claim in *Carlson*). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, *Ziglar*, 137 S. Ct. at 1864, the Court finds that the first part of the *Ziglar* test has been met here.

The Court, therefore, proceeds to the second step of the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new context. *Ziglar*, 137 S.Ct. at 1857. Because "separation of powers should be a guiding light . . . the [Supreme] Court has told us that we must not create a cause of action if there's 'a

-10-

single sound reason' to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).

Here, there are multiple reasons that a judicially-implied remedy for damages is not appropriate. First, through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. But it has never done so regarding federal actors.[4] To the contrary, more recently Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Second, there are several alternative means for prisoners to vindicate their constitutional rights. For federal inmates, the BOP's inmate grievance program provides a ready and viable mechanism to challenge alleged misconduct by staff. *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through

---

[4] The judicially-created nature of a *Bivens* remedy distinguishes it from the statutory remedy created by 42 U.S.C. § 1983, which "entitles an injured party to money damages if a state official violates his or her constitutional rights." *Ziglar*, 137 S.Ct. at 1854. Thus, Morel's argument that he may be bring his Eighth Amendment excessive force claims pursuant to *Rhodes* and *Whitley* is unavailing. Both cases were filed by state prisoners pursuant to § 1983, not by federal prisoners pursuant to *Bivens*. *See Rhodes*, 452 U.S. 337 (Ohio inmates' Eighth and Fourteenth Amendment claims brought pursuant to § 1983); *Whitley*, 106 S.Ct. 1078 (Oregon inmate's Eighth Amendment claim brought pursuant to § 1983). Neither *Rhodes* nor *Whitley* implied a *Bivens* remedy for an Eighth Amendment excessive force claim such as those brought by Morel.

which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."). This remedy is not considered less effective merely because it is created by regulation rather than by statute. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.") (emphasis added); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress.") (citation omitted). Nor is the grievance program considered a less effective remedy because it does not provide the deterrence afforded by damages. *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

In addition to the foregoing remedy, Morel could have pursued a claim for monetary relief against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq.* ("FTCA"), which is a limited waiver of the federal government's sovereign immunity permitting an action against the United States for negligent or intentional acts committed by its employees during the course of their employment. *See* 28 U.S.C. § 1346(b)(1).[5] Likewise,

---

[5] Morel's Complaint did not invoke the FTCA. While the Court construes *pro se* pleadings with leniency, it cannot create claims or allegations that the plaintiff has not made. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("a court cannot create a claim which [a plaintiff] has not spelled out in his pleading."); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal

the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct. *Hower v. Damron*, No. 21-5996 (6th Cir., Aug 31, 2022 Order) at p. 5. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S.Ct. at 1858). *See also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Morel's claim is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,' – counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 482 U.S. at 85).

The Supreme Court has instructed that, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S.Ct. at 1803 (quoting *Hernandez*, 140 S.Ct. at 743). Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Morel's Eighth Amendment

---

construction does not require a court to conjure allegations on a litigant's behalf.") (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

claims alleging that excessive force was used against him, the Court will not do so here. *See Silva*, --- F.4th ---, 2022 WL 3591107 (declining to extend a *Bivens* remedy to federal prisoner's Eighth Amendment claim based on the use of excessive force against him by prison officials). *See also Hower v. Damron*, No. 21-5996 (6th Cir., Aug 31, 2022 Order) at p. 6-7 (declining to extend *Bivens* remedy to federal prisoner's Eighth Amendment failure to protect claim); *Landis v. Moyer*, No. 1:19-CV-470, 2022 WL 2677472, at *7 (M.D. Pa. July 11, 2022) (declining to extend *Bivens* remedy to federal prisoner's Eighth Amendment excessive force claim).

In summary, because *Bivens* does not provide a monetary remedy for Morel's Eighth Amendment claims based on his allegations that excessive force was used against him (or the related claim that the defendants falsified records to cover it up), his Complaint fails to state a claim for which the relief that he seeks may be granted. Thus, his Eighth Amendment excessive force claims against Pearce, Adams, Tussey, and Goble will be dismissed. *Elhady*, 18 F.4th at 884 ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there.").[6]

## B.

Morel's remaining Eighth Amendment claim against Goble is based on the allegations that she acted with deliberate indifference to his serious medical needs by failing to immediately arrange for him to be treated by an eye doctor after he sustained his initial injuries

---

[6] Because Morel's Eighth Amendment claims against Adams and Tussey will be dismissed since *Bivens* does not provide the monetary remedy sought by Moler, the Court declines to reach the defendants' arguments that Morel inadequately pled an Eighth Amendment claim against Adams and Tussey. Morel did not adequately allege that they were personally involved in the use of excessive force against Morel. Alternatively, they are entitled to summary judgment.

to his eye during the first incident at 6:15 p.m. on October 30. However, as argued by the defendants, Morel's allegations against Goble are insufficient to state a claim for the violation of his Eighth Amendment rights with respect to his medical care. As a result, this claim also will be dismissed.

To state a cognizable claim that an official has violated Eighth Amendment rights regarding a prisoner's medical care, the "prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976). Such a claim involves a two-part inquiry containing an objective and subjective component: (1) the plaintiff must allege a sufficiently serious medical need, and (2) the plaintiff must allege facts that "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (quoting *Comstock v. McCrary*, 273 F.3d 693, 607 (6th Cir. 2001)).

"[T]he plaintiff must show that each defendant acted with a mental state equivalent to criminal recklessness" to satisfy the subjective component. *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (cleaned up). Thus, allegations that medical staff was negligent in their diagnosis or care of a prisoner's medical condition are insufficient to adequately allege an Eighth Amendment violation. *Id. See also Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021) ("This test avoids turning the Eighth Amendment into a federal malpractice statute." ); *Comstock*, 273 F.3d at 703.

The defendants argue that Morel fails to adequately allege the subjective component of his Eighth Amendment claim because he fails to specifically articulate facts showing that Goble personally deprived Morel of his Eighth Amendment rights. [Record No. 25-1 at p. 24] According to the defendants, Morel's allegations that Goble acted with "deliberate indifference" and failed to provide him with medical care are, at best, conclusory statements and unsupported speculations. [*Id*.]

As a general matter, the Court agrees that, to the extent that Morel merely alleges that Goble acted with "deliberate indifference," such allegations constitute unsupported legal conclusions which are insufficient to state a claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (cleaned up); *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim, . . . conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (citation omitted).

With respect to the medical treatment he received, Morel does specifically allege that after he was injured in the initial 6:15 p.m. incident, Goble examined him, stated that there was "nothing wrong with [his] eye" and failed to arrange for immediate attention from a qualified specialist. [Record No. 1 at p. 4]⁷ Instead, Morel was not referred for outside treatment until

---

⁷ The remainder of his allegations against Goble relate to his claim (discussed *supra*) that she falsified his medical records regarding the source of his injuries to cover up the use of excessive force. However, Morel's Complaint does not contain an allegation (nor does Morel otherwise

after he sustained additional injuries in the 8:40 p.m. incident. At that point, he was again examined by Goble, who recommended that he be sent to an outside facility for treatment.

Morel's allegations regarding Goble's failure to immediately arrange for further medical attention from an eye doctor after the 6:15 p.m. incident are insufficient to adequately allege the subjective element required to state an Eighth Amendment claim against Goble for deliberate indifference. Rather, Morel's allegations state that, rather than completely denying Morel medical care, Goble examined Morel after the 6:15 p.m. incident and, based on her examination, concluded that his injuries did not warrant immediate treatment by an outside doctor at that time. In support of her motion, Goble explains that this conclusion was based on her examination of his eyes, during which she "noted swelling with slight bruising to the right eye," but which also revealed that Morel "was able to move his eye and that both eyes were reactive to light." [Record No. 25-7 at p. 1] Goble further explains that, following her examination, she noted that Morel had sustained 5-6 circular abrasions on his back and his vitals were within normal limits, with good circulation, and unlabored breathing. [*Id*. at p. 1-2]

In his response, Morel does not deny that Goble examined him at approximately 6:40 p.m. on October 30, 2020. In fact, he relies on the Health Services Clinical Encounter Form documenting Goble's examination after the incident. [Record No. 28-1 at p. 2] While Morel clearly disputes Goble's notation regarding the cause of his injuries, he does not contest that Goble examined him or that her conclusion that Morel did not need immediate further medical attention after the initial incident was based on her assessment of Morel's injuries at that point.

---

argue) that Goble's statement on his medical record that Morel was injured while fighting with his cellmate related in any way to the medical treatment that he received.

Morel quite clearly disagrees with Goble's decision regarding his need to be seen by an eye doctor immediately after the 6:15 p.m. incident. However, "[a]n inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation." *Rhinehart*, 894 F.3d at 740 (cleaned up). Where (as here) a prisoner has been examined and provided treatment, but the prisoner merely disagrees with the course of care determined by his treating physician in the exercise of her medical judgment, his claim sounds in tort law. It does not state a viable claim of deliberate indifference under the Eighth Amendment. *See Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."); *Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F. 3d at 703.

Thus, while Morel may disagree with Goble's conclusion that he did not require immediate treatment by an eye specialist after the initial incident (and, indeed, while he may argue that the treatment provided fell below the applicable standard of care), these allegations do not suggest the sort of intentional indifference which is the touchstone of a constitutional claim under the Eighth Amendment. *Lyons v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (a prisoner's "disagreement with the exhaustive testing and treatment he received while incarcerated does not constitute an Eighth Amendment violation.") (citing *Estelle*, 429 U.S. at 107) (other citations omitted).

Accordingly, Morel's disagreement with Goble regarding the need for an immediate examination by an eye specialist after his initial injuries is insufficient to state a claim of deliberate indifference under the Eighth Amendment. As this is the basis for his Eighth Amendment claim against Goble based on his medical care, this claim will be dismissed.

For the reasons explained above, the defendants' motion to dismiss or, in the alternative, for summary judgment will be granted and Morel's complaint will be dismissed.

### III.

Morel has also filed a "motion for supplement to the record," seeking to submit additional evidence of the expungement of his disciplinary convictions related to the Incident Reports issued after the events of October 30, 2022. [Record No. 32] He provides no explanation for his failure to submit this evidence with his response to the defendants' dispositive motion. Nor does he make any effort to explain its relevance to the arguments made in his response, stating only that the defendants "purposely" did not produce these documents to "cover up and mislead this Court." [Record No. 32] But contrary to this statement, the defendants' response discussed the expungement of Morel's disciplinary convictions at length [Record No. 25-1 at p. 5-7] and at least a portion of these documents relating to Administrative Remedy No. 1067949-A1 [Record No. 32-3 at p. 4-5] were previously produced by both Morel and the defendants. [Record No. 1-1 at p. 3; Record No. 25-2 at p. 29; Record No. 28-3]

Even so, out of an abundance of caution, and in recognition of Morel's status as a *pro se* litigant, the Court has reviewed the additional evidence submitted by Morel in consideration of the defendants' motion. Thus, for administrative purposes, Morel's motion to supplement

the record will be granted. However, the consideration of these additional records related to his disciplinary proceedings do not alter the Court's conclusions. Accordingly, it is hereby

**ORDERED** as follows:

1. Morel's motion to supplement the record [Record No. 32] is **GRANTED**;

2. The defendants' motion to dismiss or, in the alternative, motion for summary judgment [Record No. 25] is **GRANTED**;

3. Morel's Complaint [Record No. 1] is **DISMISSED**, with prejudice;

4. Any pending request for relief is **DENIED AS MOOT**;

5. This matter is **DISMISSED** and **STRICKEN** from the docket.

Dated: September 9, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky